All right, our last case for this morning's docket is N. Ray Marriage of McHargue. And it's a code suit for the appellant, Mr. Paul Ciappoli. Counsel, if you may proceed. Thank you. If it pleases the court, this is a case that between Lisa McHargue and Jane D. McHargue. We call them Dale. I've known Dale since grade school, and if that's okay with the court, I'll refer it to Dale. These parties got married back in high school in 1985. Dale McHargue joined the Air Force approximately two years later in May of 1987. He was overseas, went to a lot of different places. Then in 1994, in June, when he said, you know, I want to go back to school. I want to get out of the military. He got an acceptance letter from SIU. She showed it. Dale showed it to his wife and said, I'm going to move on to school. She wasn't happy about it. He actually had already signed separation papers from the military a year later, February 9th of 1995, and had been accepted and approved to leave the military back in 1995. The divorce became final June 2nd of 1995. In Florida, right? In Florida, yes, sir. That's right, Judge. This was a divorce in Florida. I'm sorry it was enrolled into Williamson County subsequently, but the divorce wasn't for us. They were living around the Destin area. At that time, Mr. McHargue, this is a 10-10 rule. It's in the military. You have to, in order for a spouse to have any interest in his pension, you have to have two things. Be married for 10 years, but during those 10 years, he had to have been in the military for those 10 years. Now, they were married by the time the divorce came down in 1995. That was in June. They had been married in excess of 10 years by a few months. The problem was, if you recall, he didn't join the military until 87, two years later. In short, she was two years short of having any vested interest in the pension. That having been said, that is where paragraph 24 is the whole issue here of her, whether or not she's entitled to 50% of his current pension. What ended up happening is, even though he was accepted and was basically withdrawing, after the divorce, he then decides, I'm going to reenlist. He rejoins the military. There is no break in service. He goes off to Bosnia overseas, fighting for our country, whatever. At the end of the day, he ends up serving in the military, I think, approximately 27 years. Married for her for eight years, ends up in the military for 27. What complicates the matter significantly is Dale McCart remarried in March of 2000. This subsequent wife qualifies for the pension. The petitioner has attempted to take this judgment and serve it on the United States Air Force and say, we are entitled to half the pension. They have refused and will not enforce it because she did not meet the 10-10 criteria, which is married for 10 years and serviced for 10 years. So basically, what the petitioner is attempting to do is go around the military, what they will and will not recognize, and try to get pension directly from Mr. McCart. For the various reasons, we're asking that the trial court be overruled in its rulings. One of the arguments that we propose, we propose several arguments. One of them is that it's uncautionable. We believe this divorce decree is uncautionable because it basically has given an entitlement of 50% of his pension when, in fact, she had not earned it, when there was nothing in addition to that no consideration given to her in the divorce. This is troubling to me, too, and I think probably all of us would have written this a little differently. But we're stuck with what's there. I agree. And it says any military retirement in the future pursuant to his service. It doesn't say as a result of his current service, or it doesn't say future benefits are not part of this marital settlement agreement. Maybe we had a malpractice action going on in Florida. But, I mean, I'm troubled. How do I get around that language? Well, I agree. And that's why when you read it, it doesn't first blush, say, are we throwing some stuff to the wall? To a certain degree we are, to be honest. Okay? Okay, I don't know what you mean, throwing stuff against the wall. Well, what I mean is that there are a couple different arguments. Well, are you making an argument, or do you agree with your opponent that the only interpretation of this is that she gets half of whatever he earns from now to the day he dies? No, no, Judge. Do you make an argument that it's ambiguous? Yes, we have, Judge. I believe there are three or four, and I listed them in my brief, that I believe there's ambiguity in the language itself. Okay? Number one. Number two, I argue, and I cite case law that says, you know, contract terms is basically going to be what's in play here. And the case that I cite says you cannot necessarily take the specific language, but the whole instrument must be considered.  And the argument is this. There's a paragraph in the Merrill-Sutton agreement. What paragraph is that? I think it's A1, Judge. It's page 11 of my brief. Paragraph 1 in the Merrill-Sutton agreement. I don't have it here. It's on page 11 of my brief up at the top. It says, at the time of this execution of this agreement, the parties are not living together and shall hereafter live separate and apart, each being free of any and all marital responsibilities and duties to the other, as if the parties were single and unmarried. That's to me ambiguity number one. That suggests that this divorce is final, complete, it's over. And, again, I think there's case law that says you've got to take the whole instrument that I just cited into consideration, not necessarily that specific paragraph. But, again, I do think that specific paragraph is ambiguous, as I mentioned earlier in my brief. But in addition to that, there are portions of the Merrill-Sutton agreement that's ambiguous. It was his attorney, though, doing that, right? Well, and that's a wonderful point, Judge, that I expect to be brought up. Unfortunately, this particular language, and it was unrefuted, was thrown in at the last document before it was signed, quite frankly. This is language that she admitted to, that she had talked to some of her other female friends who'd been divorced, and she talked to his attorney to get that language in. And this is why I want to— Is there part of it somewhere in the record that she acknowledges that she just threw that in? Yes, she acknowledged that. This paragraph was the last— We're talking about the military return. Yes, she admitted that that paragraph, after several months of discussion and negotiation, that paragraph was the last thing to be admitted before the divorce was done. What difference does that make? Well, because there's—I know, Judge, good point. There's other testimony, though, that he testified to that she told him, and this is where the equitable issues come in, that it's just standard language. Don't worry about it. I'm never going to enforce it. Now— Her attorney says, in the future, soon to the service for the United States Air Force. That's the terminology. In the future. In the future. Well, it says receive in the future. That's right. He could receive in the future pension for the eight years he's already served. Yes. Right. Yes. And I guess, to me, the argument, though, is this. I understand what it says in the future. Our argument at the end of the day, though, is that, if anything, she would be entitled to one-half of the eight years versus 50 percent entirely of the 27 years. My other argument—let me just finish back, and I'll get back to this. There's a second paragraph of inconsistencies. It talks about alimony, that each party waives alimony support, yet it's talking about automobiles, money asked for alongside alimony. So I think there's inconsistencies there. But getting back to the other point that you guys are raising, I think at the end of the day, too, the real issue for me that's troubling— I just find it very difficult, and I don't necessarily have a case on point. I've looked. I don't know if there is a case on point. To me, it should be something against public policy that an individual can, in essence, can they bargain away a subsequent wife's right to the property interest. And I think, to a certain degree, the court system and the case law suggest that when you're married to this individual, you have a right—and I cite the current statute—to what the cruise on the pension. So in essence, if this court upholds entirely the judge's ruling, we're telling this other wife that although you've been married under Illinois law and you're entitled to the pensions and whatever, you're being denied that. In essence— How could his second wife be entitled to something he's already bargained away if that's the case? I mean— Well, that's the question. You see what I'm saying? If she doesn't have any right on something he's already bargained away, she can't gain any right. How many years— He didn't have a second wife at the time he bargained. That's correct. He got subsequently married in 2000. That's correct. Now, was he there for 27 or 26 years? I believe in all, Judge, he ended up being about 27 years, approximately, in the military. Twenty-seven. Yes, sir. And she had eight. Yes, during that eight. About 26, 27, Judge, approximately. So, you know, again— So all that money would be for him or to his wife now, then, right? Twenty-seven years? That's correct. Okay. What it would be is this. As of right now, the military will, as I said before, will not—they've already tried to collect it. The military said we're not going to honor this judgment because she didn't serve ten years, period. So what they're trying to do is go after him personally for that. But, you know, Judge Stewart, I mean, I agree. I guess it calls into question, to me, is how can an individual bargain away—to me, that's against public policy. To be able to bargain away—what authority does he have to bargain away someone else's subsequent rights that they— She didn't have any right to it at the time. At the time. And she—I mean, he wasn't married to whoever his subsequent wife was, and she came into the marriage, you know, with whatever he would have. Well, then that's one of the things about an unsuspecting spouse who normally would maybe think that they're protected under the statute and their case law, that I'm entitled to whatever, to find out all these years. Now you've bargained away. What's mine? I don't follow that one, sorry. But anyway, I don't see that argument. Well— But looking at the language of the agreement, military retirement, it starts off talking about his service he already has, and it ends talking about benefits he receives in the future pursuant to his service. Why can't—why shouldn't that be interpreted as the service he's already been in? You change one letter in the whole thing where it says his service to the United States Air Force. If you put a T in front of it and say, to this service in the United States Air Force, you're talking about what he's already done. And additionally, he acknowledges in that paragraph, at this time he does not have any vested in retirement. So then he goes on and says, but if he gets something in the future, he gets 50%. Ad Library. Judge— I'm not an ad librarian. I know. Trust me. I guess it's the frustration of that he was told that she would never enforce this document because he wasn't eligible. That it was standard language, and he relied upon it. And I guess at the end of the day, you know, that's a large part of his argument and his position. Should the ex-wife be eight over 27 now? That if there was a pension for 27 years and she would get about a third of it in eight years. Do you think? That's right. Not 50%, but about a third. I'm sorry. It would not be the 50% in here on 27 years. Well, I think that's what the current ruling is. No, right. 50% on 27 years, it would be about a third. Yes, yes. On the eight years. That's correct. On the time that she was invested, we believe that's a reasonable interpretation. More than a third. Right. Half of the age would be four. I mean, you know, quite frankly, it's what he's going to receive. And to be honest, if Bill Carter gets divorced tomorrow, his current wife qualifies. Counsel, you'll have an opportunity for a report. Yes, sir. Thank you. Mr. Paul. I'm really at a loss with what to add at this point. I think each of you have hit the case right on the head. We have a couple who bargained for a divorce. The husband wanted out of it. He hired a lawyer. They negotiated, as you all are familiar with negotiations in divorces. The lawyer wrote it up. My lady signed it. It became law in Florida. She moved back to Illinois. Four years later, we put it into the First Circuit Court of Williamson County. He was given notice. They had various back and forth at that time. None of these times and in none of these places did Mr. McCart make any objections, any appeals, any motions to reconsider. He didn't raise unconscionability. He didn't raise the 10-10 rule. It was fine with him at that time. Why would he need to do any of that if he thought what this meant was she got 50 percent of what he earned during that eight years? He doesn't say that. That's his self-serving declaration now. Well, it says he's been on active duty for eight years. That's not enough to be vested. The only way he's going to get anything for that eight years is if he serves more. Right. Twenty years is the standard. Then it goes on to say any benefits he should receive in the future. And the important part is at the end, pursuant to his service to the United States Air Force, which has already been defined in the paragraph as that eight years. Why shouldn't that be interpreted to mean if he gets paid in the future for that eight years that's already been designated in the paragraph, she gets half of it? Why didn't they say that if that's what they intended? It doesn't make any sense to say what they said. Well, like I said before, if you put a T in front of his, if you said pursuant to this service, we're talking about the eight years that we said earlier in the paragraph. I mean, why wouldn't that be a reasonable interpretation of it? I'm sure it's open to interpretation. That's why we're here today. There have been interpretations on his side that says. It also doesn't say that she gets benefits for his future service. It says she gets something out of benefits he receives in the future. The benefits being the pension. Yeah, pursuant to his service. He gets 50 percent of the benefits he receives. It doesn't say 50 percent of the benefits of 827th because at that time it was employed anyway. He didn't know if he was going to go one year, 20 years, 40 more years in the service. Well, we've defined in the paragraph what his service is at that time. I'm sorry. Am I hearing it fading? Yeah, I'm sorry. The first sentence says he's been on active duty for eight years. That's his service in the United States Air Force at the time they signed this agreement. Factual. And at the end it says she gets 50 percent of any benefits he receives in the future pursuant to his services in the United States Air Force. It doesn't say his eight years. It says his service in the Air Force. That's the way it's defined in the paragraph. That's the only thing they could have talked about then. Why wouldn't that be a reasonable interpretation? It's an interpretation. I don't think it's a fair interpretation. I don't think it's effective. If you bought a ring in your married life and the wife paid $8 on it but the ring cost $27, the husband gives the wife the ring in the divorce, is it unfair? I mean is that unjust, unconscionable? Should that be reversed? I don't agree. The husband knew at that time that 50 percent didn't come at eight years. It came whenever he quit. That's the only way you get a pension. You can't give 50 percent of eight. You can figure it all out, as Judge Fulmer has alluded to. But that's not what we're asking you to do. That would be the Air Force's job if under this 10-10 rule Mrs. McHarg did qualify and did go through the Air Force to get a pension awarded to her under federal law. 30 percent or whatever. Yes. Eight years, 26 years. And that would be calculated and that would be awarded from the Air Force to her. Check would come every month directly to her. That's not what we've got here. We've got him getting 100 percent. And the question is can he spend that 100 percent himself or does the Air Force tell him what he can give her and what he can't give her? And the answer is quite clear. He can spend it on any darn thing he feels like doing. And he did it in order to get out of this marriage. He got an attorney. He gave her 50 percent of his future pension. That's the only pension there is, Judge Stewart. There's no pension. He's getting paid for the eight years in the future but only if he adds to that eight years. Right? So why can't this be interpreted to be saying if I end up back in the military, you get half of the eight years you were around while I earned it? Why is it a more reasonable interpretation for him to say I'm giving you something that's not even marital property, something that wasn't earned during the marriage? He even went on to say he didn't intend for her to have that anyway. That's not an agreement, though. But anyway, you hit it, Judge, right on the head. Boy, I'm having a moment here. I did, too. It's okay. All right. We're serving. It's no fun to be 75 years old. You haven't changed a bit since the last time I saw you. Paul, I said that earlier. You look great. I lost my train of thought completely. Thank you, Mark. Mark, help me a little bit. I'll offer. I'll offer. The problem here is that this Air Force business is all a red herring. That's not what this court is being asked to do. This court is being asked to modify a 16-plus-year-old judgment now because the terms of the judgment, which the parties bargain and agree for, are onerous and ambiguous and confusing. That may well be. That may well be, but it's a both-ways type situation. The terms that the wife had to put up with were onerous, too. She had to raise the two boys. She had to live as a single parent. She had to make a living for the three of them. Those were onerous terms, too. So just the fact that one item in a decree is onerous to one person doesn't mean the whole decree should be thrown out. There's onerous duties going both ways. The only ambiguity is in the mind of Sergeant McHarg himself, who decided that he was not going to give her any pension benefits, but then, doggone it, he did go ahead and get a pension, and now he's up against the wall. He's got to give her the pension according to the terms of their agreement. So that's onerous, and that's what he's arguing against. And this court, I believe, should take the position that finality in a decree is more important than Sergeant McHarg's personal unhappiness with the decree. He bought it. He bargained for it. He stuck with it. Mrs. McHarg has relied upon that for the last 16 years. She was counting on that. She's not a wealthy lady, as most people in Southern Illinois are. She's going to need some help in her later declining years, as I do, too. How long will this spouse promise her that and then go in the complete opposite direction? How long are you going to let that sort of thing happen? This court is being asked to do that. Actually, the trial court was asked, and the trial court judge Brad Beier came up with what I think is a fair and honest decision. He said that was done. That was over with. You made that decision yourself. Now you've got to live with it. And, again, this court is being asked to reverse Judge Bleier's decision on that. I really don't see any legal or procedural errors that this court should pin this case on. The only question is, gee, is it fair to that sergeant? Well, maybe it's not fair to him. Maybe it's not. On the other hand, he did it. He hired the lawyer. He procured the divorce. He lived with it for 16 years. He was quite happy with it until it came time to pay up. Then he's not happy with it. I just want to mention parathetically that being in the service is honorable. I have the highest regard for the military, and I'm sure the members of the court do too. But let's not let this man wrap himself in the flag and, by doing so, give up his duties and obligations as a human being to his family and to his state. He's got an order here from this court that he has to honor. Let's not let him weasel out of that just because he served in the country. A lot of us served our country. I think Mr. McCarty had a telephone installer in Florida. That's not exactly the most deadly and dangerous job in the world. So just keep the patriotism under control, and I apologize for patronizing the court here. That's all I have to say. If there are any questions, I'd be glad to answer them. Thank you, Mr. Paul. Thank you. Coach, do you have your ballot, sir? Good. With all due respect to Bernie, I'm going to take exception about him. Dale McCarty wouldn't weasel out of anything. He's one of the finest persons I know personally. I've known him for about 30 years. Dale McCarty never missed a child support payment. When this agreement was done, he took on debt. See, I'm not going to give him all that. His relationship, she wouldn't even allow him to talk to him. I'm going to end it at that. The bottom line is he's not trying to weasel out of anything. At the end of the day, when a paragraph was put in there at the last minute, and he questions it, and she says, don't worry about it, we're not going to enforce it, there's also, I believe, testimony in the transcript that Dale McCarty actually testified that when he was going to read this, he went to the legal department at the Air Force. He said, don't worry about it, she's not eligible, 10-10, you know. He said, well, if the court in the future has eight years, that's fine. I don't know about the future. Did he testify what he understood this paragraph to mean? I believe he did, yes, he did. And did he say he understood it to mean all future? I don't believe he did, no. I believe what he said, it was an ambiguous language that was thrown at the last minute, and at the end of the day, if she was going to be entitled, what the legal department testified to, I believe, is the legal department told him she wasn't eligible, period. But at the end of the day, if anything, in his mind, he thought she would be entitled to a portion of the eight years. Is that what he testified to? I believe he did, Judge. It's been a little bit, so my memory may be. But also there was direct testimony, though, definitely, that he broached this matter with Norma Hyman back in 2003. Hey, this is the issue out there. We need to get it resolved. And he testified in a row that it was like, well, you know, she said, don't worry about it, so we're not going to worry about it. So for Bernie to insinuate that my client never raises or wanted to do it, that's untrue. It's not true. You know, at the end of the day, what we're talking about here, obviously, is a significant potential windfall for Mr. McCard. Del McCard and his current wife were the ones out there sacrificing. He's overseas and she's home for a year and never gets to see him. He's the one sacrificing. She's the one sacrificing, not Lisa McCard. Eight years of marriage, now 50%. That's a significant, to me, inequitable windfall. And I understand at the end of the day, you know, courts are not supposed to redo the deal. I understand that. I respect that. But I also respect that I think there are some issues here, a reasonable interpretation of that paragraph. It is ambiguous. I do believe it's ambiguous. And I think one reasonable, with respect, one reasonable interpretation is that she's entitled to, remember, Judge, at eight years, if he walks away, there's nothing. There is no pension. Okay? But because of him tacking on, now there is the eight years. And I believe a reasonable interpretation is she's entitled to 50% of the eight years. I believe that's a reasonable, equitable interpretation for this court to take, to direct it back to trial court to determine what dollar value is that amount. And I think that's what we're asking today. And, you know, at the end of the day, I guess if we're going to interpret contract language, what consideration, if any, did he get for that paragraph? Well, you know, there was an entire merit and settlement agreement that any part of it is consideration for whatever else they gave him. Okay. Well, that's ñ I don't know if it was adequate consideration, but I guess maybe there was some consideration. That could be. You know, I don't ñ this is ñ I know this is a gut-wrenching issue. And it has torn my client up significantly. And he's more than happy to pay for the eight years that they were married. More than happy to. His fortune, four years. He's more than happy to do that. He believed that's fair, equitable, and within reason of the merit and settlement agreement. And that's what we had asked this court to do, is to find that there's another interpretation, a reasonable interpretation is splitting the eight years into four years, to figure up a dollar amount as far as that. Any other questions? Thank you. Thank you, counsel, for your briefs and argument.